## NATHANIEL KNOWLES *vs.* JAMES DAVIS.

A justice of the peace has authority to entertain a complaint under *St.* 1846, *c.* 244, concerning hawkers and peddlers, and, after examination of the defendant, to require him to recognize with sureties to appear at the higher court; but not to require him to recognize with sureties to keep the peace and be of good behavior, in the mean time; and for an excess of jurisdiction in the latter respect he is liable in damages.

TORT against a justice of the peace, for causing the plaintiff to be arrested and brought before him for examination, on a complaint under *St.* 1846, *c.* 244, concerning hawkers and peddlers, and requiring him to recognize with sureties to appear at the next term of the court of common pleas, and, in the mean time, to keep the peace, and be of good behavior. There was no evidence of malice, and *Morton*, J. ruled that, as the proceedings before the defendant were regular in form, the action could not be sustained, and a verdict was returned for the defendant· The plaintiff alleged exceptions.

*W. L. Burt*, for the plaintiff.

*R. H. Dana, Jr.*, for the defendant.

DEWEY, J. The questions arising in the present case are twofold: 1. Whether the defendant had any jurisdiction over the subject matter of the complaint presented to him against the plaintiff, charging him with selling goods in the town of Gloucester without license, in violation of *St.* 1846, *c.* 244, concerning hawkers and peddlers; 2. Whether there was not an excess of his jurisdiction in requiring the plaintiff not only to give a recognizance with sureties to appear at the next term of the court of common pleas for said county, but also to recognize that in the mean time he would keep the peace and be of good behavior.

As to the first point, the objection is urged that a justice of the peace has no authority to issue a warrant and cause an arrest for the purpose of examining and binding over to a higher court a person charged with an offence, which may by the provisions of the statutes of the Commonwealth be prosecuted by an action or information, as well as by indictment. It is also said that, as to this particular offence, the only remedy is by an action of tort in the name of the Commonwealth.

The general authority of a justice of the peace to cause a person to be arrested upon a complaint under oath, charging him with a crime made punishable by a higher court, and, upon examination thereof, and finding good cause to believe him guilty, to order him to recognize with sureties for his personal appearance at such higher court, is unquestionable.

This offence was punishable by indictment. It falls directly within the class of cases made thus punishable by Rev. Sts. *c.* 133, § 14. There being no appropriation of the penalty directly made by *St.* 1846, *c.* 244, declaring the offence and imposing a penalty therefor, the penalty accrued to the use of the Commonwealth, and is properly prosecuted by indictment. But this offence may also be punished, and the fine imposed for the same may be sued for and recovered in an action of debt or of tort, in the name of the Commonwealth. Rev. Sts. *c.* 118, § 42.

Such being the case, the question is whether, by reason of this liability to an action by the Commonwealth, the jurisdiction of the examining magistrate, and the authority to bind over to the higher court where such indictment can alone be found, is taken away? Upon this point the authority of the case of *Commonwealth* v. *Cheney*, 6 Mass. 347, is invoked. It was held in that case that a justice of the peace could not hold one to bail for an offence which might by law be prosecuted by information *qui tam*, as well as by indictment. The ground of this decision was that no man was liable to be imprisoned, or to find bail to answer to the Commonwealth, unless, when he shall appear to answer, the Commonwealth shall have an indefeasible right to prosecute him, and that the action *qui tam* could only

be barred by finding an indictment, or, in other words, that all criminal prosecutions for such offence must originate in an indictment. This decision was not supported by any adjudicated cases, and has sometimes been questioned. But it is unnecessary now to examine it, further than to point out the difference between that case and the present. The case of *Commonwealth* v. *Cheney* arose under *St.* 1786, *c.* 68, providing a penalty for selling spirituous liquors without license, and authorizing a suit by an informer in an action in his own name, in which he would recover the penalty, one half to his own use, and the other to the use of the county. Such action would be wholly under the control of an individual, and, if first commenced, would take away all rights of the Commonwealth to any fine or forfeiture. The only question of doubt as to such a case would be, whether the preliminary proceedings before the justice of the peace on the complaint might not properly be held to be the commencement of proceedings by way of indictment, it being a proceeding that could have no other purpose.

But, however this may be, we are satisfied that no objection exists to proceeding by complaint and examination before the magistrate, for the purpose of binding over to a higher court, where a civil action to recover the same forfeiture or fine is given exclusively to the Commonwealth. No individual can interfere to defeat the prosecution by instituting a private action, and we cannot assume that the Commonwealth will do so, to defeat their own criminal process. No such action was commenced, and the party cannot avail himself of the objection to the jurisdiction of the magistrate in ordering him to recognize for his appearance at the higher court to answer to the offence thus charged against him.

A similar question arose before the supreme court of Maine in *Osborn* v. *Sargent*, 23 Maine, 527, upon a statute imposing a fine for an offence, and giving the like remedies as those provided in reference to the offence charged in the case before us. That court, though expressing doubts as to the soundness of the decision in the case of *Commonwealth* v. *Cheney*, based their own decision upon the distinction which we have stated — between

the case of a right to a *qui tam* action by an individual, and the authority by the Commonwealth to bring an action of debt in its own name.

2. The further point raised in this bill of exceptions, that the defendant was guilty of excess of jurisdiction in requiring the plaintiff, in addition to recognizing for his personal appearance at the higher court to answer to the specific charge contained in the complaint, also to recognize with sureties to keep the peace and be of good behavior, is one that requires more consideration.

The general question of the extent of the jurisdiction of justices of the peace was somewhat considered in the case of the *Commonwealth* v. *Leach*, 1 Mass. 59. It there arose upon an indictment for a common law offence tried before the court of general sessions, which was then composed of the justices of the peace for the county. It seems to have been assumed by this court, in the hearing upon a motion in arrest of judgment, that *Sts.* 1 Edw. 3, *c.* 16, and 34 Edw. 3, *c.* 1, giving jurisdiction to justices of the peace, had been adopted and practised upon here, and were to be considered as a part of our common law. But in a later case in the same volume, *Commonwealth* v. *Foster*, 1 Mass. 490, where the jurisdiction of a justice of the peace was under consideration, Sewall, J., after stating the principle that the general character and functions allowed to the office of justice of the peace in England, by force of their statutes existing at the time of the migration of our forefathers, would attach to it here, proceeds to say : " The statutes which, since the present constitution, have been enacted on this subject, have enumerated very particularly the powers and duties of justices of the peace, both in civil and criminal matters. And this enumeration is so complete as to leave very little, if any, occasion of recurring to the ancient English statutes for the powers of this office ; and perhaps the enumeration itself may be construed to preclude such recurrence for the purpose of inferring any power not enumerated. We may consider the office therefore as existing with us at this time, principally, if not entirely, according to the authorities and duties provided by the statutes enacted with us."

The view thus early suggested as to the jurisdiction of a justice of the peace has been apparently that of this court, often since expressed. In the case of *Commonwealth* v. *Otis*, 16 Mass. 198, it was held by the court that a justice of the peace has no right to take a recognizance, except under our statutes giving that jurisdiction. It was said that "the general power of justices in criminal cases is defined by *St.* 1783, *c.* 50." [51.]

In *Commonwealth* v. *M'Neill*, 19 Pick. 140, it was said by this court that "the general powers of justices of the peace in criminal cases are set forth in *St.* 1783, *c.* 51, the provisions of which are mainly revisions of former acts and in affirmance of the common law." "They are also to require sureties for the good behavior of dangerous and disorderly persons. This last provision is substantially like the provisions of 34 Edw. 3, *c.* 1, authorizing justices ' to bind to the good behavior all them that be not of good fame,' language somewhat broader and more indefinite than that of our statute." The whole matter of inquiry in that case, as presented in the opinion of the court, was whether the jurisdiction to bind over the defendant to answer to such matters as should be objected against him, and in the mean time to keep the peace and be of good behavior, was within the powers given by the statutes of the Commonwealth, and no suggestion was made that they might be enlarged by the provisions of the statute of Edw. 3 on the subject. This principle, that the authority of a justice of the peace to take a recognizance is to be sought in our own statutes, seems to have been held by this court in *Vose* v. *Deane*, 7 Mass. 280; *Commonwealth* v. *Loveridge*, 11 Mass. 337; and *Harrington* v. *Brown*, 7 Pick. 232.

Our statutes seem to have made provisions as to the particular authority to be exercised by justices of the peace in criminal cases. Rev. Sts. *c.* 85, §§ 24, 25, authorize them to punish breaches of the peace, and cause to be arrested all disturbers and breakers of the peace, or otherwise dangerous and disorderly persons, and, if found guilty, to require them to find sureties of the peace, and, when the offence is of a high and aggravated nature, to bind them over for trial to a higher court. In § 27,

6 *

authority is given, upon view of any breach of the peace, to cause the persons to be arrested, without a warrant. Also in *c.* 134, § 1, they are authorized to cause all laws made for the preservation of the public peace to be kept, and, in the execution of that power, to require persons to give security to keep the peace, and for their good behavior ; and in § 15, the like author ity is given, when there shall be an affray or any threat of vio lence in the presence of a justice of the peace.

We find a further provision in *c.* 139, § 5, authorizing courts after a conviction upon an indictment, to require, in addition to other punishment, sureties to keep the peace, and be of good behavior.

We do not find in these provisions any authority to require, in addition to a recognizance to appear at a higher court, a recognizance for keeping the peace and being of good behavior, in case of an individual brought before a justice of the peace upon the charge of a violation of *St.* 1846, *c.* 244, being an act imposing a penalty upon hawkers and peddlers exposing goods for sale without license.

Even the *St.* of 34 Edw. 3, where the authority was given to take " of all persons that be not of good fame " surety for their good behavior, would, under the better construction of it, hardly embrace a case like the present. A very recent English commentator says in respect to this statute : " Some of the ancient text writers infer from this, that sureties for good behavior may be required in an infinity of cases mentioned by them ; Lord Coke construes the words ' all them that be not of good fame ' to mean all persons justly suspected of an intention to break the peace ; Hawkins says that this is too narrow a construction, and that the words mean all persons of evil fame, and guilty of grossly immoral conduct; and Dalton makes out a long list of offences, those persons who have committed or are likely to commit which, may be bound over to their good behavior." 2 Archbold's Justice, (6th ed.) 1388. But Archbold advises justices to refrain from acting under this statute, except when a man is convicted of some offence directly against the peace, under circumstances from which it reasonably may be inferred that

he will be guilty of the same or a like offence unless he be bound over to his good behavior.

Upon referring to the cases stated by Dalton, in addition to the cases of actual or threatened direct breaches of the peace, we find that they are of the class of grossly immoral acts tending to disturb the peace, as keeping houses of ill-fame, &c. Another class has also been included, being the case of grossly defamatory libels, which were likely to lead to a breach of the peace.

Looking at this question in all the aspects in which it has been presented to our minds, the court are of opinion that it was an excess of jurisdiction in the defendant to order the plaintiff, upon the examination had upon the complaint against him, to recognize with sureties, not only to appear at the next term of the court of common pleas to answer to the particular charge, but also to recognize with sureties to keep the peace and be of good behavior in the mean time. For this excess, he is chargeable as a wrongdoer.                    *Exceptions sustained.*